IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, THROUGH NEXT FRIEND JANE ROE, § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. _____ | |
| § | | |
| SNAP, INC., BONNIE GUESS-MAZOCK, § and CONROE INDEPENDENT SCHOOL § DISTRICT, § | DEMAND FOR JURY TRIAL | |
| Defendants. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, John Doe, through next friend Jane Roe, and files this Original Complaint, and for cause of action would respectfully show as follows:

### I.    PARTIES

1. Plaintiff John Doe, a minor, is a resident of Conroe, Montgomery County, Texas. At all times pertinent to this action, Plaintiff was a student at Oak Ridge High School in the Conroe Independent School District. John Doe, at all relevant times, was less than seventeen years old.

2. The legal guardian of John Doe, herein referred to as Jane Roe, brings this action as the next friend of Plaintiff John Doe. Jane Roe is a resident of Conroe, Montgomery County, Texas.

3. Defendant Snap, Inc. dba Snapchat LLC and Snap LLC (hereinafter "Snap") is a Delaware Corporation with its principal place of business in Santa Monica, California. Snap, Inc. may be served with process through its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 E. 7th St., Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

Complaint – Page 1

4. Defendant Bonnie Guess-Mazock (herein after "Mazock") is a resident of Conroe, Montgomery County, Texas. Bonnie Guess-Mazock may be served with process by serving her at her residence, 2909 Yaupon Grove Lane, Conroe, Texas 77385, or wherever she may be found.

5. Defendant Conroe Independent School District ("The school") is a public school district and political subdivision of the State of Texas and is located in the Southern District of Texas. Defendant Conroe ISD is a person within the meaning of 42 U.S.C. § 1983. Defendant Conroe ISD may be served with process by service on its superintendent Dr. Curtis Null, at 3205 W. Davis, Conroe, Texas 77304, or wherever he may be found.

## II.    JURISDICTION

6. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the claims involve a question of federal law under 42 U.S.C. §1983. This Court further has pendant and ancillary jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367 (a).

## III.    VENUE

7. Venue is proper in this cause in the Southern District of Texas pursuant to 28 U.S.C. § 1391(a)(2) because all or substantial part of the events which gave rise to this cause of action occurred in the Southern District of Texas.

## IV.    FACTS

8. John Doe's home-life was anything but typical. To say that Doe was a disadvantaged child is putting it mildly. His father abandoned him and his mother was murdered. His life was turbulent and chaotic. His safe haven was school. He trusted his teachers and the staff that surrounded him.

9. However, that all changed in Fall 2021, when Doe was a student in his sophomore year at Oak Ridge High School in Conroe, Montgomery County, Texas. At Oak Ridge High School, Doe was required to take a science class taught by Defendant Mazock.

10. In October of 2021, Mazock preyed on Doe, knowing that he was disadvantaged. Mazock used her authority as a teacher at the school to have Doe stay with her in the classroom after the rest of the class was dismissed. Mazock met with Doe alone with the door to the classroom closed. This type of private, opposite-sex, teacher-student meeting was allowed on campus despite the risk of abuse it created.

11. At this closed-door meeting, Defendant Mazock began to groom Doe for a sexual relationship and, in furtherance of that goal, asked Doe for his Snapchat username. Mazock then began to seduce Doe via Snapchat by sending seductive photos of herself appended with solicitous messages. Defendant Conroe Independent School District did not prohibit teachers from communicating with students via social media applications. On October 19, 2021, Defendant Mazock provided Doe with her Snapchat username, and the two added each other as friends on the popular messaging application. Doe was a minor – several years from the age of majority – and Mazock was in her thirties at the time of this initial exchange.

12. Defendant Mazock sent messages to Doe using Snapchat in order to cultivate a sexual relationship. Snapchat's disappearing-messages function provided the perfect cover and opportunity for Defendant Mazock to prey on her students. Defendant Mazock frequently used Snapchat to send sexually explicit images of herself to Doe. Upon information and belief, Defendant Mazock made advances on other students at Oak Ridge High School in an attempt to groom them for a sexual relationship.

13. After adding each other as friends on Snapchat, Defendant Mazock began to see Doe outside of the classroom in order to further promote a sexual relationship. Defendant Mazock and Doe had repeated sexual contact during the fall and winter of 2021. Sex occurred at different locations. Throughout the month of December of 2021, Defendant Mazock would pick up Doe in

her vehicle so that they could park down the street from Doe's home to have sex. On other occasions, Defendant Mazock entered Doe's home to have sex with him in Doe's bedroom. Upon information and belief, Defendant Mazock also provided Doe with money and drugs on multiple occasions. On another occasion, Defendant Mazock purchased cough syrup and Benadryl and encouraged Doe to abuse those substances prior to their having sex. On January 12, 2022, Doe overdosed on prescription drugs provided to Doe by Defendant Mazock or purchased with money Mazock gave him for their purchase.

14. Defendant Mazock's sexual and romantic relationship with Doe developed rapidly and overtly. In addition to the explicit messages and pictures sent via Snapchat, Defendant Mazock sent coded messages via traditional text message to Doe. On January 9, 2022, Defendant Mazock texted Doe, "don't forget the percs of th [sic] tutoring," in what is both a reference to their sexual relationship and a request for Doe to illicitly purchase her prescription drugs known as Percocet. It also clearly demonstrates that Mazock was abusing her position as a teacher at the Conroe Independent School District – apparently with impunity. Defendant Mazock's traditional text messages became more explicit and manipulative as well, with Defendant Mazock texting Doe, "I wanted to be there when you said no one was but I'm fucking stupid" and "I love you dumbass" on January 12, 2022.

15. Upon information and belief, members of the Oak Ridge High School community were aware of the illicit relationship between Mazock and Doe, and it was an open secret that students frequently discussed. Mazock made no secret of her interest in Doe and exhibited explicit interest in him beyond what was appropriate for a teacher-student relationship. Anthony Livecchi, the Principal of Oak Ridge High School, failed to investigate the rumors and failed to intervene in deliberate indifference to the rights of Doe. Moreover, the school district failed to properly train

school staff and administrators to recognize and report inappropriate sexual relationships between students and teachers.

16. Mazock initiated and continued – for months – an illicit relationship with one or more of her students on school grounds without any repercussions. In fact, Mazock's relationship with Doe would likely have gone unnoticed and continued indefinitely but for the fact that Doe unfortunately overdosed on the drugs that Mazock provided him. Upon Doe's guardian's investigation, it was revealed that Mazock – his trusted teacher – not only provided him with the drugs used to overdose, but also repeatedly molested him without anyone intervening to stop her.

17. The school district's lack of supervision and training was so pervasive and widespread that it clearly demonstrates a conscious indifference to the rights of its students. Moreover, the school district's hiring of a teacher who, in a matter of a mere few months after being hired, was able to initiate and repeatedly consummate a sexual relationship with one or more of her minor students demonstrates the school district's conscious indifference to the constitutional rights of its students through its hiring practices, screening and training.

18. As for Snapchat's role in fostering a child molester, it is well known that Snapchat monitors its users' activities. However, Snapchat's primary focus is not on stopping child molesters, but instead it turns a blind eye and focuses only on tracking its users' activities in order to sell more ads to advertisers. Despite having the means to stop this horrific conduct, Snapchat is not interested in helping victims who fall prey to these child molesters. Sadly, money is all that matters. Monitoring and reporting child molesters is not profitable, so Snapchat buries its head in the sand and remains silent.

## V. CAUSES OF ACTION

### Bonnie Guess-Mazock

**A.  Violations of 42 U.S.C. § 1983 – Violations of Bodily Integrity**

19. Schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment. Physical abuse, sexual misconduct, and assault by a teacher violates that right. This legal right to be free from illegal sexual conduct by a teacher is well established and has been clearly established for many years preceding the sexual relationship between Mazock and Doe.

20. Mazock, while acting under the color of state law as a licensed teacher for the Conroe Independent School District, deprived Doe of rights secured to him by the Constitution of the United States of America. Mazock sexually abused Doe, a minor, while he was a student in her class. Mazock's actions showed conscious indifference to Doe's right to be free from sexual abuse and violations of bodily integrity as guaranteed by the due process clause of the Fourteenth Amendment.

21. Under the Fourteenth Amendment, Doe had the right to be free of this type of conduct, and Doe certainly had the well-established right to be free of illegal sexual advances by his teacher at school.

22. Mazock's actions constitute conscious indifference to Doe's rights under the Fourteenth Amendment of the U.S. Constitution, and her conscious indifference to those rights was the producing and proximate cause of Doe's injuries.

**B.  Assault, Battery and Statutory Rape**

23. The preceding paragraphs are hereby incorporated by reference.

24. Defendant Mazock acted knowingly, intentionally, and recklessly in soliciting and consummating her illicit sexual relationship with Doe. She knowingly, intentionally, and recklessly made repeated physical and sexual contact with Doe, which caused serious bodily and emotional injury to Doe. Mazock's intentional actions in subjecting Doe to sexual assault and abuse constitute assault, battery, and intentional infliction of emotional distress.

25. Doe legally lacked the capacity to consent to sexual intercourse with Mazock. In Texas, the legal age of consent is seventeen years old; Doe had not reached the age of consent at the time of Mazock's seduction. There is no defense to Mazock's intentional assault and constitutional deprivation.

26. These torts were the producing and proximate cause of Doe's injuries and damages.

## Conroe Independent School District

### A. Violations of 42 U.S.C. § 1983 – Failure to Adequately Train

27. The preceding paragraphs are hereby incorporated by reference.

28. Anthony Livecchi, while acting under the color of state law as principal of Oak Ridge High School, and the Conroe Independent School District deprived Doe of rights secured to him by the Constitution of the United States of America.

29. The School had a training policy that was inadequate to the point of being deliberately indifferent to its students' rights and Doe's rights in particular. Upon information and belief, the School's training policy failed to adequately train its teachers and staff regarding:

   a. Awareness of warning signs that indicate inappropriate student-teacher relationships;

   b. The inappropriateness of unsupervised, opposite-sex, private meetings between teachers and students; and

   c. Communications with students, including sending and receiving sexually explicit content and the warning signs thereof.

30. Moreover, the School was deliberately indifferent to Doe's constitutional rights in failing to adequately train Defendant Mazock. Defendant Mazock was in her first semester as a teacher at Oak Ridge High School when she began to seduce Doe. Defendant Mazock's decision to interact with Doe on social media applications to cultivate a sexual relationship clearly indicates a lack of training on the written policies prohibiting such relationships. The impunity with which Mazock conducted herself with Doe further demonstrates an inadequacy of training that rose to the level of conscious indifference by the School. The School's failure to train Defendant Mazock was the producing cause of Defendant Mazock's sexual assault of Doe.

31. The School's actions and inaction constitute conscious indifference to Doe's rights under the Fourteenth Amendment of the U.S. Constitution and this conscious indifference to those rights was the producing and proximate cause of Plaintiff's injuries.

**B.      Violations of 42 U.S.C. § 1983 – Failure to Properly Screen Employees**

32. The preceding paragraphs are hereby incorporated by reference.

33. The Conroe Independent School District has a persistent and widespread practice of failing to properly screen their potential employees prior to hiring them and placing them into the classroom with vulnerable students. Although this policy is not officially adopted and promulgated, it is so common and well settled as to constitute a custom that fairly represents municipal policy. Upon information and belief, Conroe Independent School District has had at least five instances of sexual assault of a student by employees in the last 20 years. Within just the past two weeks, a Conroe Independent School District teacher was arrested in the parking lot of his high school for online solicitation of a minor.

34. Mazock is a sexual predator. Within weeks of being hired by the Conroe Independent School District, she began grooming Doe and, upon information and belief, other students for

sexual relationships. According to the criminal complaint filed against her, Mazock's Snapchat username was "starshine bunny." Mazock was communicating with multiple students on Snapchat, including "M.P." in whom Mazock confided that she and Doe were having sex and that Doe had made a "cough syrup jolly rancher" because he was feeling down.

35. Upon information and belief, an adequate background check would have revealed Mazock's pedophilic tendencies. This policy of failing to properly screen potential employees demonstrates a conscious indifference to the rights secured to students by the Fourteenth Amendment. Principal Livecchi was acting pursuant to and in conformity with this policy when he hired Defendant Mazock and entrusted her with a classroom full of children. The foregoing policy was the proximate and producing cause of Plaintiff's injuries.

C.   **Violations of 42 U.S.C. § 1983 – Failure to Adequately Supervise**

36. The preceding paragraphs are hereby incorporated by reference as if set forth in full here.

37. The School has a custom and practice of failing to adequately supervise its teachers that is so common and accepted that it fairly represents a policy of the school. Mazock seduced Doe on school grounds. She attempted to seduce other students. The highly inappropriate relationship between Mazock and Doe persisted for months and was only discovered because Doe tragically overdosed on drugs procured by Mazock or with money she gave Doe for the purpose of buying drugs. Other students knew of the relationship, and other teachers and administrators knew or should have known of such an obvious illicit relationship.

38. The Conroe Independent School District has a policy that allows teachers and students of the opposite sex to hold closed door meetings privately in classrooms and other rooms within the high school. This policy has resulted in tacit approval of inappropriate relationships between teachers and students. The failure of the Conroe Independent School District to properly supervise

its teachers' interactions with students is so rampant that the practice has the force of law; this practice was the proximate and producing cause of Doe's injuries. If Defendant Mazock had not been afforded the opportunity to cultivate a close personal relationship with Doe, the sexual assaults at issue in this case would not have occurred.

39. Moreover, by explicitly permitting opposite-sex, student-teacher private meetings on school grounds, the School District promulgated and policy and procedure that demonstrates a conscious indifference to the Fourteenth Amendment rights of the students of the District and Doe in particular. This conscious indifference was the driving force behind the constitutional deprivation suffered by Doe.

## Snap, Inc.

### A. Negligent Undertaking

40. Defendant Snap created the Snapchat application, which offers users a platform to send messages and photos to one another that automatically delete after a short period of time. Snapchat represents that it reports all instances of child sexual exploitation to authorities – this is a duty Snapchat claims to have undertaken to protect its young users. Although Snapchat allows its users to change their birthdate up to five times, indicating an implicit permission to lie about their age, it is aware that most of its users are minors, regardless of their most recent birthday input.

41. As of 2018, a majority of U.S. teenagers were users of Snapchat.[1] Snapchat gathers data and monitors messages for its own marketing purposes. Snap claims that it reaches 75% of the millennial and "Gen Z" populace; "Gen Z" is typically defined as young people between the ages of 10 and 25. Snapchat advertises to marketers that it has the capabilities to target its consumers

---

[1] Monica Anderson, *Teens, Social Media and Technology 2018*, PEW RESEARCH CENTER (May 31, 2018), https://www.pewresearch.org/internet/2018/05/31/teens-social-media-technology-2018/

by "location, demographics, interests, devices…and more!" Snapchat, by its own admission – in order to sell advertising – moderates "Snaps and Stories" to assure its advertising customers that their ads will not "show up next to something that could be harmful to your brand."[2]

42. Snapchat explains to advertisers that it undertakes to monitor content to prohibit bullying and explicit content. Snapchat claims to achieve these goals through its "dedicated Safety and Support teams" and its "Abuse Engineering team" who monitor…abuse incidents on Snapchat."[3] These "moderation tools" demonstrate that Snapchat undertakes to monitor the content of information shared on its platform, at least for its own marketing purposes and financial gain.

43. Having undertaken to monitor and profit from the data generated by user-created content, Snap, Inc. owes a duty under Texas law to perform that duty fully and reasonably. Most importantly, Snap owes a duty to its minor users to protect them from sexual predators who are drawn to the Snapchat application by the privacy assurances granted by the disappearing messages feature of the application. Snap cannot and should not undertake to monitor content for its own profit and then fail to protect vulnerable minors once it has undertaken to monitor content.

44. In the present case, Snap, Inc. breached that duty by failing to exercise reasonable care in performing its data-mining services and failing to intervene when an adult started sending sexually explicit messages and images to a minor. Although Snap implicitly approves of its users providing false ages (it does not flag a user's birthdate changes until the fifth change), it extracts sufficient data from the user to accurately determine, and target, a user's age. By failing to intervene while

---

[2] Snapchat, *Why Advertise on Snapchat?,* SNAP, INC., shorturl.at/pHP23 (last visited February 16, 2022).

[3] Snapchat Support, *Brand Safety*, SNAP, INC., https://support.snapchat.com/en-US/a/brand-safety?lang=en-US&_sid=PAID&utm_source=GoogleSEM&utm_medium=PAIDB2B&utm_campaign=US_G_Search_Brand_Beta-snapchatmarketing&utm_term=US&utm_content=WhySnapchatAds (last visited February 16, 2022).

still allowing minor users to send and receive messages from adults on their Snapchat application, Snap increased the risk of harm to Doe and to all other minor users of Snapchat.

**B.     Negligent Design**

45.    Defendant Snap owed a duty to use ordinary care in designing, maintaining, and distributing its products and services.

46.    Defendant Snap breached that duty by negligently designing its application Snapchat, and by allowing minors to use that application. As designed, Snapchat automatically deletes messages and images sent by users after a short period of time. By its own terms, Snapchat allows users as young as 13 years old to create accounts and use the application. By allowing for the widespread practice of using false birth dates, users younger than 13 years old are using the application. By creating an environment where adults can interact with underage users with assurances that there will be no long-lasting evidence of those interactions, Snap has fostered an environment that draws in sexual predators and allows them to act with impunity. Snap's initial and continued design decisions regarding Snapchat are unreasonable and negligent. A safer alternative design is available to Defendant Snap because Defendant could require proof of majority, adult consent, or refuse access to minor users at any time.

47.    As a result of Defendant Snap's negligence, Defendant Mazock was provided the means to seduce Doe and sexually assault him, both of which were foreseeable to Defendant Snap Defendant Snap's negligence was a producing cause of Doe's injuries in this case.

**C.     Gross Negligence**

48.    When viewed objectively from the perspective of Defendant Snap, there was an extreme risk of grievous harm presented in marketing an application to minors that, by design, allows pedophiles to prey on them with apparent impunity. Moreover, having undertaken to monitor

content for its own profit – creating behavior-targeting advertising – it had a duty to perform that duty fully and adequately. However, Defendant Snap made the conscious decision to use the information it gained only for its own financial gain, yet it claims ignorance when minors are victimized in the same content it monitors. This demonstrates a subjective awareness of, and conscious indifference to, the grave risk that manifested in this case – the use of its product to foster the sexual exploitation of a minor by an adult who held power and authority over him. Defendant Snap was aware that there was a risk of harm to Doe, yet it chose to ignore any information it acquired that would not directly result in its own profit.

## VI.      DAMAGES

49.     As a result of the above-noted violations, Doe incurred significant damages. Doe has suffered, and will continue to suffer, physical pain, severe and permanent psychological damages, injury to his name, character and reputation, embarrassment and humiliation, injury to his academic progress, and injury to his emotional development. Further, his dignity and faith in the education system and teachers of Conroe ISD have been irreparably destroyed. Plaintiff also incurred substantial medical bills; he overdosed on drugs provided to him by his sexual abuser and required a lengthy hospital stay to recover. Doe also suffered, and continues to suffer, significant mental anguish and distress. Moreover, Plaintiff Doe is entitled to punitive damages from Mazock, as her actions were clearly motivated by evil and selfish motive. Plaintiff is further entitled to attorney's fees, costs of suit, and prejudgment interest.

## VII.     PRAYER

**WHEREFORE**, Plaintiff demands judgment on each of the causes of action alleged for the following relief:

   1)    Judgment in favor of Plaintiff and against all Defendants, jointly and severally, for damages in such amounts as may be proven at trial;

2) Compensation for both economic and non-economic losses, including but not limited to:

    a) past and future medical expenses;

    b) past and future physical pain and mental anguish;

    c) permanent psychological damage;

    d) injury to his name;

    e) injury to his character and reputation, embarrassment and humiliation;

    f) injury to his academic progress; and

    g) injury to his emotional development, in such amounts as may be proven at trial;

3) Punitive and/or exemplary damages in such amounts as may be proven at trial;

4) Attorneys' fees and costs;

5) Pre- and post-judgment interest; and

6) Such other and further release to which Plaintiff may be entitled, whether in law or equity.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

Dated: February 24, 2022

                                                                                      Respectfully submitted,

                                                                                      /s/ Derek Merman
                                                                                      Derek Merman
                                                                                      Attorney in Charge
                                                                                      Texas State Bar No. 24040110
                                                                                      Fed Bar No. 578113
                                                                                      Kane Kenney
                                                                                      Texas State Bar No. 24116609
                                                                                      Fed Bar No. 3609021
                                                                                      **HEARD MERMAN LAW FIRM**

                                        4900 Fournace Place, Suite 240
                                        Bellaire, Texas 77401
                                        713.665.1100 Voice
                                        713.481.7082 Facsimile
                                        Derek@HeardMerman.com
                                        Kane@HeardMerman.com
                                        HLFpi@HeardMerman.com

                                        **ATTORNEYS FOR PLAINTIFF**