United States District Court
Southern District of Texas
**ENTERED**
July 07, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN DOE, THROUGH NEXT FRIEND JANE ROE, | § § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-22-00590 |
| SNAP, INC., BONNIE GUESS-MAZOCK, and CONROE INDEPENDENT SCHOOL DISTRICT, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

John Doe alleges that when he was a 15-year-old sophomore at Oak Ridge High School, in Conroe, Texas, his science teacher, a woman in her thirties, engaged him in a sexual relationship. This teacher, Bonnie Guess-Mazock, allegedly lured Doe into the relationship by using the social-media platform, Snapchat, to send Doe inappropriate messages and photographs, and then by encouraging him to take prescription and over-the-counter drugs during sex. The sexual assaults continued repeatedly over several months. They were discovered when Doe overdosed on the prescription drugs Guess-Mazock provided him. After a long hospital stay, Doe recovered, at least from the drug overdose. Doe's legal guardian sues Guess-Mazock, the Conroe Independent School District, and Snap, Inc., the company that owns and maintains Snapchat. All defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docket Entries Nos. 11, 10, 24).

Based on the motions, the responses, the replies, and the applicable case law, the court grants in part and dismisses in part Guess-Mazock's motion to dismiss, (Docket Entry No. 24); grants the school district's motion to dismiss, (Docket Entry No. 11); and grants Snap, Inc.'s

motion to dismiss, (Docket Entry No. 20).  Doe's claims against the school district and Doe's intentional-infliction-of-emotional-distress claim against Guess-Mazock are dismissed without prejudice and with leave to amend.  Doe may amend his complaint against the school district by **August 22, 2022.**  Doe's claims against Guess-Mazock are abated until 90 days after Doe serves Guess-Mazock with notice as required under the Texas Education Code § 22.0513.  Doe's claims against Snap, Inc. are dismissed with prejudice.

The reasons are set out below.

## I.    Background

The summary of the factual background is based on the allegations in Doe's complaint, which the court accepts as true in considering this motion to dismiss.  The allegations describe a troubled adolescent who survived a difficult childhood.  Doe's father abandoned him as a child, and his mother was murdered.  Doe has been raised by Jane Roe, his guardian, who brings this lawsuit on his behalf.  (Docket Entry No. 1, at 2).

In October 2021, during his sophomore year at Oak Ridge High School, Doe's science teacher, Guess-Mazock, a woman in her thirties, "preyed" on the fifteen-year-old Doe, knowing that he was young and otherwise vulnerable.  Guess-Mazock asked Doe to "stay with her in the classroom after the rest of the classroom was dismissed" and "met with Doe alone with the door to the classroom closed."  (*Id.*, at 3).  "At this closed-door meeting, [Guess-Mazock] began to groom Doe for a sexual relationship and, in furtherance of that goal, asked Doe for his Snapchat username."  (*Id.*).  "Guess-Mazock then began to seduce Doe via Snapchat by sending seductive photos of herself appended with solicitous messages."  (*Id.*).

Throughout the fall and winter of 2021, Guess-Mazock and Doe "had repeated sexual contact . . . at different locations," including Guess-Mazock's car and Doe's home.  (*Id.*, at 3–4).

2

Guess-Mazock also purchased, or gave money to Doe to purchase, prescription and over-the-counter drugs, "and encouraged Doe to abuse those substances prior to their having sex." (*Id.*, at 4). On January 12, 2022, Doe overdosed on prescription drugs that Guess-Mazock gave Doe or paid him to get. Doe survived after a long hospital stay. (*Id.*, at 13).

Doe's legal guardian filed this civil action, asserting claims under federal law against the Conroe Independent School District, and asserting claims under federal and state law against Guess-Mazock. As to the school district, Doe first alleges that it violated § 1983 by failing to adequately train its teachers and staff to identify illegal and inappropriate student-teacher relationships. (*Id.*, at 7). Doe alleges that even though "the illicit relationship between Guess-Mazock and Doe . . . was an open secret that students frequently discussed," school staff and administrators were not trained "to recognize and report inappropriate sexual relationships between students and teachers." (*Id.*, at 4–5). Second, Doe alleges that the school district failed to properly screen teachers and other employees, even though the district "had at least five instances of sexual assault of a student by employees in the last 20 years." (*Id.*, at 8). Doe alleges that "[u]pon information and belief, an adequate background check would have revealed Guess-Mazock's pedophilic tendencies." (*Id.*, at 9). Third, Doe alleges that the school district failed to adequately supervise Guess-Mazock, who not only assaulted Doe, but also "attempted to seduce other students." Doe alleges that the school district should not have allowed "opposite-sex, student-teacher private meetings on school grounds," and that by "explicitly permitting" these meetings, "the School District promulgated a[] policy and procedure that demonstrates a conscience indifference to the Fourteenth Amendment rights of students of the District and Doe in particular." (*Id.*, at 10).

As to Guess-Mazock, Doe alleges that she violated Doe's due process rights under the Fourteenth Amendment "to be free of illegal sexual advances by his teacher at school." (*Id.*, at 6). Doe alleges that Guess-Mazock assaulted, battered, and raped him, because "Doe had not reached the age of consent at the time of Guess-Mazock's seduction." (*Id.*, at 6–7).

Finally, Doe asserts three state-law negligence claims against Snap, Inc., the owner of Snapchat.  Doe alleges that Snap is liable for "negligent undertaking" because it "claims to have undertaken to protect its young users" by "report[ing] all instances of child sexual exploitation to authorities," a duty that it breached "by failing to exercise reasonable care in performing its data-mining services and failing to intervene when [Guess-Mazock] started sending sexually explicit messages and images to [Doe]." (*Id.,* at 11).  Doe also alleges that Snapchat is "negligently designed" because the application "allow[s] for the widespread practice of using false birth dates," so that "users younger than 13 years old are using the application."  Doe alleges that "[b]y creating an environment where adults can interact with underage users with assurances that there will be no long-lasting evidence of those interactions, Snap has fostered an environment that draws in sexual predators and allows them to act with impunity."  And Doe alleges a claim of gross negligence, stating that when "viewed objectively . . . Snap presented an extreme risk of grievous harm in marketing an application to minors that, by design, allows pedophiles to prey on them with apparent impunity." (*Id.*, at 12).

## II.    The Standard for a Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a federal court dismisses a complaint if it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  In reviewing a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s]

4

all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014).  "A court reviewing a motion to dismiss under Rule 12(b)(6) may consider '(1) the facts set forth in the complaint, (2) the documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.'" *DZ Jewelry, LLC v. Certain Underwriters of Lloyds London*, No. H-20-3606, 2021 WL 1232778 (S.D. Tex. Mar. 21, 2021) (quoting *Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019)).

To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

The motions to dismiss the federal and state law claims by each of the three defendants, the Conroe Independent School District, Guess-Mazock, and Snap, Inc., are addressed in turn.

### A.    The Conroe Independent School District

Doe asserts a § 1983 claim against the Conroe Independent School District.  Doe alleges that "Anthony Livecchi, while acting under the color of state law as principal of Oak Ridge High

School, and the Conroe Independent School District deprived Doe of [his Due Process] rights."
(Docket Entry No. 1, at 7).  Doe does not name Livecchi as a defendant in this lawsuit.  Doe alleges
that the school district violated § 1983 by failing to properly train its teachers and staff to identify
warning signs indicating inappropriate student-teacher relationships; that the school district was
"deliberately indifferent . . . in failing to adequately train Defendant Guess-Mazock"; that the
school district failed to properly screen employees before "placing them into the classroom with
vulnerable students"; and that the school district failed to "adequately supervise" its teachers by
"ha[ving] a policy that allow[ed] teachers and students of the opposite sex to hold closed door
meetings private in classrooms and other rooms within the high school."

The school district argues that Doe's complaint must be dismissed because Doe has not
alleged that an official policymaker "approved, adopted, or ratified any actions Doe claims caused
him injuries."  (Docket Entry No. 11, at 9).  The school district also argues that Doe has not alleged
that an official policymaker's actions or inactions amounted to deliberate indifference of Doe's
constitutional rights.  (*Id.*, at 13).

The court agrees with both arguments.  Liability cannot be imposed on school districts
under a theory of vicarious liability or *respondeat superior*.  *Collins v. City of Harker Heights*, 503
U.S. 115, 120 (1992).  A plaintiff must plausibly allege that a policy or custom attributable to the
school district was the "moving force" behind the deprivation of the plaintiff's constitutional
rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  That policy or custom must
have been tolerated or approved by a person or entity with final policymaking authority for the
school district.  *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 753–54 (5th Cir. 1993).  In
Texas, the school district's Board of Trustees is the sole entity with final policymaking authority

6

for the school district.  *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting TEX. EDUC. CODE ANN. § 11.151(b)).

To survive a motion to dismiss, Doe must plausibly allege that Conroe Independent School District's Board of Trustees adopted an unconstitutional policy or otherwise knew about and acquiesced "in a permanent and deeply embedded abusive and unconstitutional practice."  *Penny v. New Caney Indep. Sch. Dist.*, No. H-12-3007, 2013 WL 2295428, at *4 (S.D. Tex. May 23, 2013) (citing *Piotrowski*, 237 F.3d at 578–79).  "Isolated violations of law by [the school district's] employees cannot constitute a custom or policy by [the district's] Board of Trustees."  *Id.*

Doe's complaint does not once mention the Board of Trustees.  The complaint alleges that "[t]he School" had "inadequate" training policies, and that "the School was deliberately indifferent to Doe's constitutional rights."  (Docket Entry No. 1, at 7–8).  These allegations are insufficient to allege that the Board of Trustees adopted an unconstitutional policy or acquiesced to an unconstitutional custom.

Doe has also not alleged that an official policymaker's actions or inactions amounted to deliberate indifferent of his constitutional rights.  "When a plaintiff bases [his] claim on a failure to implement or enforce a policy or custom, the facts alleged must support an inference of deliberate indifference to the plaintiff's constitutional rights."  *Gonzalez*, 996 F.2d at 753–54, 755–56.  Doe appears to base at least three of his claims against the school district on the district's failure—not the Board's—to implement policies or customs that would have protected him from harm by Guess-Mazock.  Doe alleges that the school district did not enact adequate training policies to teach teachers and staff "warning signs that indicate inappropriate student-teacher relationships"; that the school district did not enact social media policies prohibiting teachers from communicating with students; and that the school district "fail[ed] to adequately supervise its

7

teachers," because the school "allows teachers and students of the opposite sex to hold closed door meetings privately in classrooms and other rooms within the high school."

To plead that an official policymaker acted with deliberate indifference, Doe would need to plead facts showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [school district could] reasonably be said to have been deliberately indifferent to the need." *Gonzalez*, 996 F.2d at 757 (citation omitted).  Doe has not alleged a pattern of sexual assault by teachers, or inappropriate contact between teachers and students through social media, that has "occurred for so long or so frequently," that the need for more or different training is obvious. *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009).  Doe alleges that the school district had "at least five instances of sexual assault of a student by employees in the last 20 years." This allegation does not suggest a pattern of sexual assault so obvious that the school board acted with deliberate indifference to Doe's constitutional rights by failing to enact different training or social media policies.  Five instances over twenty years suggests, at most, isolated instances of condemnable conduct, but not a pattern of behavior among teachers requiring different training protocols.

 "To act with deliberate indifference," the school board "must also know of and disregard an excessive risk to the victim's health or safety."  *McLendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (internal quotations omitted).  The allegation that Guess-Mazock preyed on Doe in a classroom with the door closed does not plausibly allege that the Board knew or should have known, from one instance of abusive conduct, that allowing teachers to communicate with opposite-sex students in closed-door rooms would pose an excessive risk to students' safety.  It is

not "so obvious" that a teacher who is alone with a student of the opposite gender will sexually assault that student, so as to require the enactment of an open-door policy.

Doe also alleges that the school district "has a persistent and widespread practice of failing to properly screen their potential employees prior to hiring them and placing them into the classroom with vulnerable students." (Docket Entry No. 1, at 8). But even assuming that this adequately alleges a policy or practice, Doe has not alleged facts that could support "a direct causal link between the alleged policy and the claimed constitutional injury." *Penny*, 2013 WL 2295428, at * 4 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998)). Doe alleges, in conclusory fashion, that "an adequate background check would have revealed Guess-Mazock's pedophilic tendencies." (Docket Entry No. 1, at 9). Doe does not explain what a background check might have revealed or how the background check "would have revealed Guess-Mazock's pedophilic tendencies." Doe does not allege, for example, that Guess-Mazock had a criminal record or a record from prior employment that would have raised any red flags about Guess-Mazock, which might lend support to his allegations.

Doe has not alleged that the Board of Trustees enacted or failed to enact policies or customs with deliberate indifference to Doe's constitutional rights. The school district's motion to dismiss is granted, without prejudice and with leave to amend by no later than August 22, 2022.

### B.    Bonnie Guess-Mazock

Doe asserts a federal claim under 42 U.S.C. § 1983 and state-law claims of assault, battery, statutory rape, and intentional infliction of emotional distress against Guess-Mazock. In her motion to dismiss, Guess-Mazock does not deny that she sexually assaulted, battered, and raped Doe. Instead, she argues that because she did not assault Doe on school property or during school

events, the § 1983 claim must be dismissed because she did not commit the assaults under color of state law.

Guess-Mazock argues that Doe's state-law claims must be dismissed because Doe did not comply with certain procedural prerequisites to filing the state-law claim against her as a school district employee, and because she has "professional immunity" under Texas state law.  (Docket Entry No. 24, at 9 (citation omitted), 11).   The Texas law she relies on provides that:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX. EDUC. CODE ANN. § 22.0511(a).

Guess-Mazock argues that she is immune from Doe's state-law claims because she "is a professional employee under the statute," and "her actions [were] within the scope of her duties." (Docket Entry No. 24, at 11).  Guess-Mazock argues, however, that she is also immune from Doe's federal-law claim because she was *not* acting "under the color of state law."  (*Id.*, at 9).

Doe asserts that Guess-Mazock's arguments for dismissing the claims are irreconcilable. Doe argues that if Guess-Mazock acted under the scope of her employment in sexually assaulting Doe, then she necessarily acted under color of state law, regardless of whether the assaults occurred on school property or during a school event.   "Under color of state law," however, "does not necessarily equate to 'scope of employment.'"  *McLaren v. Imperial Cas. and Indem. Co.*, 767 F. Supp. 1364, 1371 n.4 (N.D. Tex. 1991) (citing *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980)); *cf. Robinett v. City of Indianapolis*, 894 F.3d 876, 881 (7th Cir. 2018) ("[The plaintiff] argues that there is no effective difference between [under color of state law] and scope of employment.  That is incorrect.  While the two concepts are 'closely related,' they are 'not identical.'"  (citation

omitted)).   While it is Doe's burden to plead that Guess-Mazock acted under the color of state law, "[i]mmunity under § 22.0511 is an affirmative defense," and so Guess-Mazock bears the burden of establishing that she acted within the scope of her employment.  *Moreno v. Northside Indep. Sch. Dist.*, No. SA-11-CA-0746-XR, 2012 WL 13029076, at \*9 (W.D. Tex. Jan. 23, 2012).

This case demonstrates, at least on the pleadings, that it is plausible that Guess-Mazock acted "under the color of state law" for the purpose of Doe's § 1983 claim, but did not act "under the scope of employment" for the purpose of Doe's state-law tort claim, so that both survive dismissal.   The reasons are explained below.

### 1.        42 U.S.C. § 1983

Doe has plausibly alleged a claim under § 1983.   To state a claim under § 1983, Doe must allege that he was deprived of a constitutional right "by a person acting under color of state law."[1] *West v. Atkins*, 487 U.S. 42, 48 (1988); *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).   Doe alleges that Guess-Mazock violated his Due Process right to bodily integrity.   Guess-Mazock does not contest that Doe, a minor who is legally incapable of consent to sex, has a constitutionally protected right to be free from sexual abuse by his teacher.   *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (*en banc*) ("We hold . . . that schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right.").

"Although the law is clear that physical sexual abuse of a student by a school teacher can give rise to § 1983 liability, a separate and essential element of such a claim is that the abuse occur under color of state law."  *Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir. 1997).   Guess-Mazock argues that Doe's § 1983 claim should be dismissed, because he has not alleged that she was acting

---

[1] As a public official, Guess-Mazock can be sued in her official or her personal capacity. *See Hafer v. Melo*, 502 U.S. 21 (1991).  Doe alleges that he has sued Guess-Mazock in her personal capacity.

under color of law when the sexual abuse occurred, as no alleged assault occurred on school premises or at school functions.  This argument is unpersuasive based on Doe's allegations and Fifth Circuit precedent.

*Becerra v. Asher* is instructive.  Asher, a music teacher in the Houston Independent School District, sexually molested an eleven-year-old student, identified as Juan Doe.  *Id.* at 1044.  Juan's mother sued Asher, the school district, and three school administrators, alleging a federal-law claim under § 1983 and state-law claims.  The Fifth Circuit, sitting en banc, held that the mother failed to state a claim under § 1983 against Asher, because the "physical sexual abuse of Juan did not occur under color of state law."  *Id.* at 1047.

In that case, Asher "first befriended and show[ed] a special interest in Juan at school," but the assaults did not start until after Juan "withdrew from the school where [the teacher] taught." *Id.* at 1047.  Juan and Asher separately "continued a friendship," "includ[ing] home music lessons, trips to the zoo and theme parks, and church activities," after Juan had left school.  *Id.* at 1044, 1047.  Asher then twice assaulted Juan in Juan's home.  *Id.*

The Fifth Circuit held that "[a]s egregious and cruel as Asher's acts were," "Asher's physical sexual abuse of Juan did not occur under color of state law." *Id.* at 1047.  The court noted that "[t]he assaults occurred at Juan's home," and that "Asher first molested Juan more than five months after Juan withdrew from the school where Asher taught.  Asher's contacts with Juan thereafter were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official." *Id.*  The court emphasized that "Asher was not Juan's teacher 'before, during, and after' the sexual abuse, nor was this wrongful conduct 'on and off school grounds.'"  *Id.* (quoting *Doe v. Taylor*, 15 F.3d 443, 452 n.4 (5th Cir. 1994)).

Juan had "offered expert affidavits to the effect that the seduction of Juan began at school, and the later sexual abuse would not have occurred if Asher had not first won Juan's trust and affection while serving as his teacher." *Id.* But, the Fifth Circuit stated, "the constitutional violation [under the Due Process Clause] did not extend to the development of trust and affection." *Id.* "On this evidence," the court concluded, "there was no 'real nexus . . . between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher.'" *Id.* (citation omitted).

The *Becerra* court reached its conclusion by distinguishing an earlier Fifth Circuit decision, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994), and by comparing the case to a Tenth Circuit decision, *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cnty., Okl.*, 894 F.2d 1176 (10th Cir. 1990). These cases help define the parameters of a § 1983 claim when a student alleges that he or she was sexually assaulted by a teacher.

In *Doe v. Taylor*, a female student was sexually molested by her high school teacher. 15 F.3d at 445. The Fifth Circuit held that the teacher's actions *were* taken under color of state law. *Id.* at 452 n.4. The court wrote:

> In this case, . . . [the teacher] took full advantage of his position as Doe's teacher and coach to seduce her. He required Doe to do little or no work in the classroom and still gave her A's. He also spoke to one of Doe's other teachers about raising her grade in that class. [The teacher] was also Doe's basketball coach and he exploited that position as well. The first physical contact [the teacher] had with Doe was after a basketball game in November 1986 when he grabbed her and kissed her. [The teacher's] physical contact with Doe escalated thereafter. During the next several months [the teacher] took Doe from his classroom to an adjoining lab room where he kissed and petted her. During that same period of time [the teacher] also met Doe in the school's fieldhouse where similar activity took place.

*Id.*

The court concluded that because "a 'real nexus' exist[ed] between the activity out of which the [Constitutional] violation occur[red] and the teacher's duties and obligations as the teacher," the teacher's conduct was "taken under color of state law." *Id.*

The Tenth Circuit reached the opposite conclusion in a case involving allegations of sexual assault of a student by a teacher.  In *D.T. by M.T.*, a teacher molested a student over summer vacation, at the teacher's home, following a fundraising activity for a basketball camp that was not affiliated with the school.  894 F.2d at 1177.  "It [was] uncontested in [the] case" that the teacher "was on summer 'vacation'" and "had no duties or obligations owing to or functions to perform for the School District."  *Id.* at 1186.  "His contract required only that he teach fifth grade and coach boys' basketball . . . commencing late August and continuing to the end of May of each year."  *Id.*  The school principal had "made it plain [to the teacher] that any and all activities associated with [the] summer basketball camps were not school related."  *Id.*  As a result, the court concluded, the "events were the product of a private individual acting in his private capacity."  *Id.* (citation omitted).  The student had failed to state a claim under § 1983.

This case is between *Doe v. Taylor* and *D.T.* and *Becerra*.  Unlike the plaintiff in *Doe v. Taylor*, the Doe in this case does not allege that a sexual assault occurred on the school campus or at school functions, or that Doe received any favoritism on grades in the classroom.  Unlike the plaintiffs in *D.T.* and *Becerra*, Doe was a student of the teacher who allegedly committed the assault. Doe has alleged that Guess-Mazock used her authority as Doe's assigned teacher to have Doe stay with her in the classroom after the rest of the class was dismissed.  Doe alleges that Guess-Mazock "began to seduce Doe via Snapchat by sending seductive photos of herself appended with solicitous messages."  Although Doe does not allege whether these messages were sent while Guess-Mazock and Doe were on or off school property, it is plausible that messages

14

were sent during school hours.  Doe similarly does not allege that Guess-Mazock and Doe had sex on school property, but does allege that "[s]ex occurred at different locations," and provides only a few examples.  Doe alleges that Guess-Mazock "exhibited explicit interest in him beyond what was appropriate for a teacher-student relationship," so that "it was an open secret" among students on campus, suggesting that there plausibly was illicit contact on campus.

When a teacher sends inappropriate messages to a student in her class, it is more than plausible to believe that that student would fear repercussion if he did not answer those messages, or attempted to cut off ties, compared to if "a total stranger [had] been contacting [him]."  *Chivers v. Cent. Noble Cmty. Sch.*, 423 F. Supp. 2d 835, 854 (N.D. Ind. 2006).  Guess-Mazock's "official interactions with [Doe] and [her] sexual pursuit [of Doe] constituted an 'indivisible, ongoing relationship' even though a significant amount of the sexual misconduct [allegedly] occurred after hours and off school grounds[.]"  *Id.* at 854 (quoting *Doe v. Taylor*, 15 F.3d at 461 (Higginbotham, *J.*, concurring)).  There was a sufficiently alleged nexus between Guess-Mazock's position of trust and authority as Doe's teacher, and Guess-Mazock's violation of Doe's bodily integrity to state a claim.  Guess-Mazock's motion to dismiss Doe's § 1983 claim is denied.

## 2.      State-Law Claims

Doe also asserts four state-law claims against Guess-Mazock of assault, battery, statutory rape, and intentional infliction of emotional distress.  (Docket Entry No. 1, at 7).  Guess-Mazock moves to dismiss these claims on both immunity and procedural grounds.  Guess-Mazock argues that she is immune from suit under the Texas Education Code, because

> [a] professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX. EDUC. CODE ANN. § 22.0511(a). Guess-Mazock argues that Doe's alleged tort claims were "incident to or within the scope of [her] duties."

Guess-Mazock also argues that dismissal is required on procedural grounds because, under Texas law, "before a person may sue a professional employee of a school district, such as a teacher, the claimant must first give written notice to the employee of the claim, reasonably describing the incident from which the claim rose. . . . [Doe] makes no such allegation that he provided notice to Guess-Mazock." (Docket Entry No. 24, at 11) (citing TEX. EDUC. CODE ANN. § 22.0513(a)). Guess-Mazock also argues that Doe "made an irrevocable election of remedies when he filed suit on these claims and named [the school district] as a co-defendant," because Texas law "immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit" if the plaintiff also sues the "governmental unit regarding the same subject matter." (*Id.*, at 12 (citing TEX. CIV. PRAC. & REM. CODE § 101.106)).

Finally, Guess-Mazock argues that Doe has failed to plausibly allege a claim of intentional infliction of emotional distress. Guess-Mazock does not challenge Doe's claims of assault, battery, and rape. The court addresses Guess-Mazock's immunity claim, before turning to her other arguments.

i.      Immunity Under the Texas Education Code

"Whether [a teacher] is acting within the scope of [her] employment depends upon whether the general act from which [the] injury arose was in furtherance of the employer's business and the accomplishment of the object for which the employee was employed." *Gonzalez v. Johnson*, No. 04-20-00516-CV, 2021 WL 4976562, at *2 (Tex. App. Oct. 27, 2021) (quoting *Chesshir v. Sharp*, 19 S.W.3d 502, 505 (Tex. App. 2000)). The burden is on Guess-Mazock to establish that she was (1) "a professional employee of a school district"; (2) that the "challenged

16

conduct was within or incident to the scope of [her] duties"; (3) that her "duties involved the exercise of discretion or judgment"; and (4) that her "acts did not cause the plaintiff injury as a result of the use of excessive force in disciplining the plaintiff or negligence in disciplining the plaintiff." *Doe v. S & S Consol. I.S.D.*, 149 F. Supp. 2d 274, 297 (E.D. Tex. 2001). The following cases demonstrate that Guess-Mazock was not acting within the scope of her employment when she purchased drugs for Doe and sexually assaulted him.

In *Ashley G. v. Copperas Cove Indep. Sch. Dist.*, Case No. 19-cv-420, 2020 WL 7240392 (W.D. Tex. Dec. 9, 2020), parents of a fourteen-year-old son with autism sued three school administrators after the administrators allegedly assaulted their son. The assault occurred when M.G., the student, was called to the assistant principal's office after he was accused of stealing a snack from another student. *Id.* at *1. M.G. denied the allegation and tried to leave the office. "Upon being told to sit down repeatedly by [the assistant principal] while she blocked the door, M.G. pushed [the principal] out of the way and into a wall." *Id.* at *2. "At this point, the first of two restraints on M.G. was initiated." *Id.* Another assistant principal, Robert Turner, wrapped his arms around M.G. and "attempted to place M.G. in a standing restraint." *Id.* Later, after M.G. started to kick Turner, Turner "guided M.G. to the ground by placing one knee on the ground while in the hug containment." *Id.*

The parents brought a common-law assault claim against the assistant principals. The court held, however, that the assault claims were barred "by the statutory immunity under Tex. Educ. Code § 22.0511," because "[i]t [was] within the scope of educators, especially principals and counselors, to address discipline and behavioral incidents of students," and "[t]he restraint performed was an act of discretion under their duties." *Id.*

In *Anderson v. Bessman*, 365 S.W.3d 119 (Tex. App. 2011), a group of faculty members of the University of Texas Medical Branch at Galveston sued the provost and several department chairs for wrongly firing them, asserting various tort claims. *Id.* at 121. The faculty members alleged that the administrators violated school procedures and "terminated faculty positions based on financial incentives and personal animosities, and had acted in bad faith in recommending their termination." *Id.* at 123. The school administrators moved to dismiss the lawsuit, alleging that their decisions to terminate the faculty was well within their discretion.

The court agreed that the school administrators were immune from suit because they were acting in the scope of employment when they fired the faculty members, even if the firing was alleged to be based on their own financial incentives and personal animosities. The alleged conduct underlying the tort claims—the school administrators firing faculty members—fell within the administrators' job duties, and was therefore within the scope of their employment.

Finally, in *Jackson v. Texas Southern University*, 31 F. Supp. 3d 884 (S.D. Tex. 2014), a Texas Southern University faculty member, Dr. Jackson, sued another faculty member, Dr. Adobo, for assault.[2] Dr. Jackson alleged that he was proctoring an exam with Dr. Adobo when Dr. Adobo physically assaulted him without provocation. Dr. Adobo argued that because the assault was within the scope of his employment, he was immune from suit. The court agreed. The court "f[ound] from the facts alleged . . . that Dr. Adobo was acting in the scope of his employment in proctoring an exam as lawfully assigned by [Texas Southern University], substantially within the authorized time and space limits of the university's scheduling, even if he was motivated in part by personal animosity toward Dr. Jackson." *Id.* at 888.

---

[2] The issue in *Anderson* and *Jackson* was whether the school administrators were immune under the Texas Tort Claims Act, which similarly provides that a government employee is immune if the lawsuit is "based on conduct within the general scope of that employee's employment," among other criteria. Tex. Civ. Prac & Rem. Code Ann. § 101.106(f).

These cases suggest that an employee is acting in the scope of his or her employment if he or she commits a tort while completing a job duty.  In *Ashley G.*, the assistant principals allegedly assaulted a student while they were disciplining him.  In *Anderson*, school administrators allegedly committed various torts when they fired faculty members.  In *Jackson*, a faculty member allegedly assaulted another faculty member while he was proctoring an exam.

The question is whether Doe has alleged that Guess-Mazock was performing her duties as a teacher when she allegedly assaulted, battered, and raped Doe.  The court cannot conclude, based on the allegations, that Doe's injuries occurred "within" or "incident to" Guess-Mazock's duties as a teacher.  There is no allegation that, for example, Guess-Mazock was communicating with Doe about school assignments when Guess-Mazock assaulted Doe.  There is no allegation that Guess-Mazock was teaching Doe at the time of the assault.  There is no allegation that Guess-Mazock was working to advance the school's interests when Guess-Mazock sexually assaulted Doe off-campus.

"Because this is a 12(b)(6) motion, the [c]ourt cannot go beyond the pleadings in deciding" whether Guess-Mazock was acting within the scope of her employment, "[a]nd, as noted, immunity under § 21.0511 is an affirmative defense."  *Moreno*, 2012 WL 13029076, at *10.  "Dismissal under Rule 12(b)(6) based on affirmative defense is appropriate only if the application of the defense is apparent on the face of the complaint."  *Id.*  Doe's allegations thread a thin needle.  The court finds that Doe has sufficiently alleged a nexus between Guess-Mazock's authority as a teacher and her sexual assault of Doe to plausibly support that Guess-Mazock was acting under color of state law for purposes of Doe's § 1983 claim.  But the court also finds that Doe has also not alleged facts showing that the tort occurred incident to the scope of Guess-Mazock's duties as a teacher, as required for her to be entitled to immunity on Doe's state-law claims.  Further

discovery may reveal that one, or both, of these conclusions is inaccurate.  But dismissal of Doe's

state-tort claims on immunity grounds is improper under Rule 12(b)(6).

ii.      Election-of-Remedies

In addition to her immunity argument, Guess-Mazock argues that Doe's state-law claims

must be dismissed under the Texas Tort Claims Act because Doe "made an irrevocable election of

remedies when he filed suit on these claims and named [the school district] as a co-defendant."

Guess-Mazock argues that the Texas Tort Claims Act "immediately and forever bars any suit or

recovery by the plaintiff against any individual employee of the governmental unit" if the plaintiff

also sues the "governmental unit regarding the same subject matter."

The Texas Tort Claims Act's election-of-remedies requirement is irrelevant to this dispute,

because the Texas Tort Claims Act does not apply to Doe's claims.  The Act provides that "[a]

government unit in the state is liable for:

(1) Property damage, personal injury, and death proximately caused by the wrongful
act or omission or the negligence of an employee acting within the scope of
employment if:

(A) the property damage, personal injury, or death arises from the operation or use
of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas
law; and

(2) personal injury and death so caused by a condition or use of tangible personal or
real property if the government unit would, were it a private person, be liable to the
claimant according to Texas law.

TEX. CIV. PRAC. AND REM. CODE § 101.021.

Doe has not complained of personal injury proximately caused by the condition or use of

tangible, personal, or real property, or the operation or use of a motor-vehicle.  The Tort Claims

Act's election-of-remedies does not apply to Doe's claims.  *See Dallas Cnty. Mental Health v. Bossley*, 968 S.W.2d 339, 343 (1998).

> iii.     Intentional Infliction of Emotional Distress

Guess-Mazock also argues that Doe has not alleged the necessary elements of an intentional infliction of emotional distress claim.  Guess-Mazock does not raise any similar argument about Doe's assault, battery, or rape claims.  Guess-Mazock argues that Doe has not plausible alleged an intentional infliction of emotional distress claim because he has not "pled any facts that establish any degree of severity of his alleged emotional distress suffered as a result of Guess-Mazock's actions," because Doe "acknowledg[es] that his childhood and homelife were 'turbulent and chaotic.'"  (Docket Entry No. 24, at 13).  Guess-Mazock appears to suggest that Doe could not suffer from severe emotional distress from her conduct, because he already experienced emotional distress at home.  While the court finds that this particular argument is meritless, the court agrees that Doe's claim for infliction of emotional distress must be dismissed.

The Texas Supreme Court has stated that a claim for intentional infliction of emotional distress is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."  *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 68 (Tex. 1998)).[3]  "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."  *Id.* (citing cases).   Additionally, "when the substance of the complaint is

---

[3] The case on which Doe relies to argue that he has properly asserted an intentional infliction of emotional distress claim, *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596 (E.D. Tex. 1998), predates *Standard Fruit*—the Texas Supreme Court case which held that a plaintiff must allege facts independent of another tort claim to support an intentional infliction of emotional distress claim.

covered by another tort, 'a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, [an alternate] claim.'" *Miller v. Target Corp.*, 854 F. App'x 567, 569 (5th Cir. 2021) (quoting *Hoffman-La Roche, Inc.*, 144 S.W.3d at 448).

Doe alleges that Guess-Mazock intentionally "subject[ed] Doe to sexual assault and abuse" which "constitute[d] . . . intentional infliction of emotional distress." (Docket Entry No. 1, at 7). As alleged, Doe's intentional-infliction claim is not based on conduct separate from the conduct giving rise to his assault or statutory rape claims. *See Hoffman-La Roche*, 144 S.W.3d at 450 (denying the plaintiff's intentional-infliction claim because it was not "independent of her sexual harassment claim"); *Draker v. Schreiber*, 271 S.W.3d 318, 323 (Tex. App. 2008) ("[T]o maintain a claim for intentional infliction of emotional distress, [the plaintiff] was required to allege facts independent of her defamation claim."). Doe's intentional-infliction claim is dismissed, without prejudice, so that Doe may, if he can, amend his claim to allege facts sufficient to support an independent claim for intentional infliction of emotional distress.

iv.     Required Notice Under the Texas Education Code

Finally, Guess-Mazock argues that the court should dismiss Doe's state-law claim on procedural grounds because Doe did not provide her with required notice of his claims under § 22.0513 of the Texas Education Code. At the court's June 28, 2022, hearing, and in his motion to dismiss response, Doe conceded that he did not provide Guess-Mazock with adequate notice. The remedy is not dismissal, but abatement. *See Gray v. Fort Worth Indep. Sch. Dist.*, Case No. 4:09-cv-00225-Y (N.D. Tex. June 4, 2009) (Docket Entry No. 10) ("[S]ection 22.0513 requires such a notice, but provides that a court shall abate the suit if notice was not provided."). The Texas Education Code provides that "[n]ot later than the 90th day before the date a person files a suit against a professional employee of a school district, the person must give written notice to the

employee of the claim, reasonably describing the incident from which the claim arose." TEX. EDUC. CODE § 22.0513. The Code also provides that if "[a] professional employee of a school district against whom a suit is pending . . . does not receive written notice," that employee "may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending." *Id.* The court, in turn, "shall abate the suit if the court, after a hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section," and that abatement will "continue[] until the 90th day after the date that written notice is given to the professional employee of a school district." *Id.* § 22.0513(c), (3).

It is unclear whether Guess-Mazock is entitled to this notice, because she was no longer a school district employee when Doe filed suit. No "Texas state or federal case [has] analyz[ed] whether a Plaintiff must give pre-suit notice to a former employee under TEX. EDUC. CODE § 22.0513." (Docket Entry No. 41, at 1). Guess-Mazock argues that "the answer is clear" that notice is still required, because "the analysis is whether the challenged acts were by a professional employee, and not whether a defendant in a lawsuit is currently employed." (*Id.*). She argues that as long as she committed the alleged acts while she was still a teacher in the Conroe School District, she is entitled to the protections, including procedural protections, afforded by the Texas Education Code.

The conservative approach is to give Guess-Mazock the notice and abatement she seeks, despite the resulting delay, and despite the facts that Guess-Mazock has already received the complaint, hired counsel, and timely filed a motion to dismiss. Still, the court, out of an abundance of caution, finds that abatement is required. Doe and Guess-Mazock must file a joint letter informing the court when Doe has provided Guess-Mazock with notice required under § 22.0513.

Doe may move to reopen the case 90 days after he has provided Guess-Mazock written notice of his claims, and file an amended complaint at that time.  *See* TEX. EDUC. CODE § 22.0513(d). Because of the abatement, the court vacates its previous scheduling order deadlines only as they apply to Guess-Mazock.  (Docket Entry No. 40).  The deadlines remain in place as to the claims against the school district, except that Doe may have until August 22, 2022, to amend his complaint against the school district.

### C.    Snap, Inc.

Finally, Doe asserts three claims against Snap, Inc.  First, Doe asserts a claim of "negligent undertaking."  (Docket Entry No. 1, at 10).  Doe alleges that "Snapchat represents that it reports all instances of child sexual exploitation to authorities," and as a result has undertaken a "duty . . . to protect its young users."  (*Id.*).  Doe alleges that Snap has represented "to advertisers that it undertakes to monitor content to prohibit bullying and explicit content," and has created a host of anti-abuse measures designed to monitor the content shared on its platform, including "dedicated Safety and Support teams" and an "Abuse Engineering Team."  (*Id.*, at 11).  Doe alleges that Snap breached its duty "to exercise reasonable care in performing its data-mining services and failing to intervene when an adult started sending sexually explicit messages and images to a minor."  (*Id.*).  Doe alleges that Snap should be able to "extract[] sufficient data from the user to accurately determine, and target, a user's age," to identify when "minor users . . . send and receive messages from adults on their Snapchat application."  (*Id.* at 11–12).

Second, Doe asserts that Snap "negligently designed" Snapchat "by allow[ing] users as young as 13 years old to create accounts" using false birthdates, "[b]y creating an environment where adults can interact with underage users with assurances that there will be no long-lasting evidence of those interactions," and by creating a platform that deletes messages and images

shortly after they are sent.  Doe alleges that that Snap owes a duty to "use ordinary care in designing, maintaining, and distributing its products and services," and that through these alleged design flaws, has "fostered an environment that draws in sexual predators and allows them to act with impunity."  (*Id.*, at 12).

Finally, Doe asserts a claim of "gross negligence," alleging that Snap was "conscious[ly] indifferen[t] to . . . the use of its product to foster the exploitation of a minor by an adult" by "marketing an application to minors that, by design, allows pedophiles to prey on them with apparent impunity."  (*Id.*, at 12–13).

Snap argues that Section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars Doe's three negligence claims, because "Section 230 immunizes interactive computer service providers like Snap from liability for its users' content and any alleged failure to adequately monitor such content."  (Docket Entry No. 20, at 9).  Snap also alleges that "even setting aside the dispositive issue of Section 230 immunity," Doe "fails to plausibly allege any claim against Snap," because Doe "does not, and cannot, allege that Snap was a proximate cause of [Doe's] harm—i.e., that 'but for' the use of Snapchat, Mazock would not have abused him."  (*Id.*).

The court agrees that Doe's claims against Snap are barred by the Communications Decency Act.  Section 230 of the Communications Decency Act "provide[s] broad immunity . . . to Web-based service providers for all claims stemming from their publication of information created by third parties."  *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.").  "No cause of action may be brought and no liability may be imposed under any State or local law," 47 U.S.C. § 230(e)(3), if the cause of action would "make internet service providers liable for

information originating with a third-party user of the service," *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020).

Neither party disputes that Snap is an "interactive computer service" provider protected by Section 230.  The Communications Decency Act defines "interactive computer service" broadly to include "any information, service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ."  47 U.S.C. § 230(f)(2).  Multiple courts have held that Snap is an "interactive computer service" provider, because "[t]he Snapchat application permits its users to share photos and videos through Snap's servers and the internet. Snapchat thus necessarily 'enables computer access by multiple users to a computer server,' and Snap, as the creator, owner, and operator of Snapchat, is therefore a 'provider' of an interactive computer service." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021); *see also Grossman v. Rockaway Tp.*, No. MRS-L-1173-18, 2019 WL 2649153, at *14 (N.J. Super. Ct. June 10, 2019); *Palmer v. Savoy*, No. 20-CVS-94, 2021 WL 3559047, at *5 (N.C. Super. July 18, 2021).

The disputed issue is whether Doe's claims attempt to hold Snap liable for "[the] publication of information created by third parties."  *Myspace, Inc.*, 528 F.3d at 418.  If so, Doe's claims are barred by Section 230.  *See In re Facebook, Inc.*, 625 S.W.3d 80, 83 (Tex. 2021) ("[T]he uniform view of federal courts interpreting [Section 230] requires dismissal of claims alleging that interactive websites . . . should do more to protect their users from the malicious or objectionable activity of other users.").

The Fifth Circuit considered allegations similar to Doe's in *Doe v. Myspace, Inc.*, 528 F.3d 413 (5th Cir. 2008).  In that case, a parent alleged that Myspace had failed to take sufficient steps to prevent her 13-year-old daughter from lying about her age to create a personal profile on Myspace, which resulted in her being contacted and ultimately assaulted by a sexual predator.  The

Fifth Circuit held that the plaintiff's claim was barred by Section 230, because the claim sought "to hold Myspace liable for its failure to implement measures that would have prevented [the child] from communicating with [a sexual predator]." *Id.* at 420. These allegations, the court explained, were "merely another way of claiming that Myspace was liable for publishing the communications." *Id.*

The Third Circuit considered similar allegations in *Green v. Am. Online, Inc. (AOL)*, 318 F.3d 465 (3d Cir. 2003), and held that AOL was immune from the plaintiff's claims under Section 230. In that case, the plaintiff sued AOL after he received a computer virus from a third-party and received derogatory comments from users in an online "chat room." *Id.* at 469. The plaintiff alleged that AOL had negligently failed "to properly police its network for content transmitted by its users." *Id.* at 470. The Third Circuit held that Section 230 barred the plaintiff's claims because the plaintiff "attempt[ed] to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role." *Id.* at 471.

The Ninth Circuit, however, recently held that Snap was not entitled to immunity on a negligent design allegation. In *Lemmon v. Snap*, 995 F.3d 1085 (9th Cir. 2021), parents of two boys sued Snap after their sons were killed in a car crash. The crash occurred because the boys were driving at high speeds while attempting to take a picturing using a Snapchat filter that shows users the speed at which they are traveling. The parents alleged that Snap negligently designed Snapchat by creating "[t]he Speed Filter," among other alleged design flaws. *Id.* at 1091–92. Snap moved to dismiss on immunity grounds under Section 230. The Ninth Circuit denied the motion, alleging that the parents' complaint did "not seek to hold Snap liable for its conduct as a publisher or speaker," but instead "treat[ed] Snap as a products manufacturer, accusing it of negligently

designing a product (Snapchat) with a defect."   Put differently, the parents' claim was not about the publication of content, it was about Snap's alleged negligence "as a product designer."  *Id.* at 1092.

Doe's negligent undertaking, negligent design, and gross negligence claims all seek to hold Snap liable for messages and photos sent by Guess-Mazock.  Doe's allegations are similar to those *Myspace* and *AOL*, and distinguishable from those in *Lemmon*.  Doe's negligent undertaking claim alleges that Snapchat has failed to monitor content and messages sent between parties on its platform.  Doe's gross negligence claim alleges that Snap is indifferent to sexual predators' use of the platform to message minors "with apparent impunity."  Each of these claims seek to "fault[] [Snap] for information provided by [a] third part[y]"—messages and photos sent by Guess-Mazock to Doe.  *Lemmon*, 995 F.3d at 1093.  Section 230 provides Snap with immunity from these claims.

Doe's negligent design claim is similar barred by the Communications Decency Act.  Doe alleges that Snapchat is negligently designed because the application fails to prevent underage users from creating accounts using false birthdays, and because Snapchat allows messages to automatically delete after a short period of time.  Doe alleges that these designs cause harm because they allow adults to inappropriately message children.  While Doe's negligent design claim "may be couched as [a] complaint[] about" Snapchat's "design and operation . . . rather than . . . its role as a publisher of third-party content," Snapchat's "alleged lack of safety features is only relevant to [Doe's] injuries to the extent that such features would have averted wrongful communication via [Snap's] platforms by third parties."  *In re Facebook, Inc.*, 625 S.W.3d at 93–94 (internal quotation marks and citations omitted).  The crux of Doe's negligent design claim, like his negligent undertaking and gross negligent claims, is that Snapchat designed its product with

features that allegedly created the opportunity for Guess-Mazock to send illicit messages to Doe. Doe's negligent design claim similarly aims to hold Snap liable for communications exchanged between Doe and Guess-Mazock.   This claim is also barred by Section 230.

Doe concedes that "[i]f this Court follows the prevailing precedent" on Section 230 immunity, then "the court must dismiss this case." (Docket Entry No. 30, at 17–18).   The court agrees.   Because Snap is immune from Doe's claims, and because amendment would be futile, Snap's motion to dismiss is granted, with prejudice.[4]

## IV.    Conclusion

Guess-Mazock's motion to dismiss, Docket Entry No. 24, is granted in part and denied in part; the school district's motion to dismiss, Docket Entry No. 11, is granted; and Snap's motion to dismiss, Docket Entry No. 20, is granted.   Doe's claims against the school district and Doe's intentional infliction of emotional distress claim against Guess-Mazock are dismissed without prejudice, and with leave to amend.   Doe's claims against Snap, Inc., are dismissed with prejudice, because amendment would be futile given Snap, Inc.'s broad immunity under Section 230.

This case will proceed on two tracks.   Doe may amend his complaint against the school district by **August 22, 2022.**   The court's scheduling order, Docket Entry No. 40, remains in place for resolving Doe's claims against the school district.   The court abates Doe's claims against Guess-Mazock until 90 days after Doe gives Guess-Mazock written notice of his claim, as required under the Texas Education Code.   Doe and Guess-Mazock must file a joint letter indicating that Doe has provided Guess-Mazock with this required notice.   Doe may file an amended complaint

---

[4] Because the court finds that Doe's claims against Snap are barred by the Communications Decency Act, the court does not address Snap's arguments that Doe has failed to plausibly allege that Snap owed, and breached, a duty to Doe, or that Snap's conduct proximately caused Doe's harm.

29

as to Guess-Mazock after the abatement period ends.  The court will set a new scheduling order

for resolving Doe's claims against Guess-Mazock after Doe files his amended complaint.

SIGNED on July 7, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge